## BANKERS NATIONAL BANK v. ROYAL INDEMNITY COMPANY.[1]

July 25, 1930.

No. 27,412.

[1]Reported in 231 N. W. 798.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *Warren Newcome,* for appellant.

*George S. Grimes,* for respondent.

HOLT, J.

The appeal is from the order denying a new trial.

Plaintiff sued for money had and received. When its evidence was in, the suit was dismissed on defendant's motion. On appeal this court held that "plaintiff made a prima facie case, and defendant should have been put to its defense," and the order denying a new trial was reversed. Bankers Nat. Bank v. Royal Ind. Co. 172 Minn. 379, 380, 215 N. W. 674. The new trial was to the same judge who tried it before, and the parties stipulated that the evidence introduced and the proceedings had on the former trial, as shown by the former settled case, should be considered as had in this trial up to the time plaintiff rested. It follows therefore that it must be regarded on this appeal that plaintiff's evidence justified a recovery, unless defendant adduced evidence which refuted the prima facie case made by plaintiff, or the defenses pleaded were established, or error occurred in the admission or exclusion of evidence which required a new trial.

To the facts stated in the former appeal may be added that the court found on undisputed evidence that O'Connor and Hunt had earned under their contracts with John F. Cramer, doing business under the name of the Cramer Construction Company, $6,354.84, on November 23, 1922, when the latter, without cause, pursuant to a

notice given two days previously, terminated the contract. The court also found that no part thereof had been paid to O'Connor or Hunt, or to Edward Berkner, or to plaintiff; neither had Cramer or the defendant paid out on account of any claims incurred by O'Connor and Hunt in the performance of their contract any sum or amount whatever. Bearing in mind that when Cramer let the contract of graveling to O'Connor and Hunt he knew that plaintiff's assignor, Berkner, was going to outfit them with trucks and necessaries to do the work and that they had assigned 70 per cent of their earnings to Berkner, which assignment Cramer had accepted and the highway department had notice of, there should be no doubt that as between Cramer, O'Connor and Hunt, and this plaintiff (the successor in interest of Berkner) the latter was entitled to the assigned part of the earnings, and Cramer's attempt to cancel the assignment and assign his earnings, including those of O'Connor and Hunt, to defendant, his surety, was futile. Defendant was Cramer's surety and as such had bound itself to stand good for what O'Connor and Hunt earned, and it is not in position to claim any advantage under its assignment as against the holder of the previous assignment from O'Connor and Hunt, who had the right to claim payment under defendant's bond. It is not disputed that defendant received from the state or the state highway department $18,162.09 on the Cramer contract. This of course included the $6,354.84 earned by O'Connor and Hunt.

It appears without contradiction that Edward F. Berkner under a conditional sales contract sold and delivered eight motor trucks to O'Connor and Hunt so as to enable them to take the graveling contracts; and to make such sale and delivery Berkner borrowed of plaintiff $16,000 on his promissory note, assigning as collateral security the O'Connor and Hunt assignment of the 70 per cent of their earnings and also their promissory notes in the sum of $16,360, representing the purchase price of the trucks, together with the assignment of the conditional sales contract for the trucks. The record reveals that a year and a half or two years after the breach by Cramer of the graveling contracts with O'Connor and Hunt,

Berkner, who was still liable to the bank on the $16,000 loan and therefore interested in the collateral given, ascertained that the trucks were about to be sold for storage and repair charges, paid such charges and obtained possession of the trucks, and has since sold or disposed of some or all of them. Defendant claims as a defense that this amounted to a wiping out of O'Connor's and Hunt's debt to Berkner; that Berkner's remedy against the vendees is gone by virtue of the repossession of the property sold. Berkner's testimony in effect was that he, in taking possession, sought to protect the title to the property for the benefit of those interested. Those interested were plaintiff, himself, and O'Connor and Hunt. As between those we fail to see where defendant can inject its interests as directing in any manner the legal question whether O'Connor and Hunt were by this act of Berkner released from the payment of their notes or the purchase price of the trucks. But aside from that, Berkner's act could not affect the security plaintiff had previously procured and still held in the conditional sales contract and notes of O'Connor and Hunt, or in the assignment of 70 per cent of their earnings. We see no merit in the claimed defense arising through Berkner's taking possession of the trucks under the circumstances disclosed by the record.

As intimated in the decision on the former appeal, a meritorious defense would be that defendant had expended the 70 per cent of the money earned by O'Connor and Hunt and assigned by them to plaintiff's assignor in payment of claims arising out of the said graveling contracts; and it was suggested that this might include the payment of claims contracted by Cramer in the performance of his contract, not covered by the O'Connor and Hunt contracts. As to the latter suggestion it suffices to say that no attempt whatever was made to show any expenditure by defendant of the $18,162.09 it received in payment of claims contracted by Cramer under his contract. But defendant did offer to prove that it had paid claims contracted by O'Connor and Hunt in their graveling contracts. And the important question in this lawsuit is: Did the court err in excluding the evidence offered to prove such payment?

Neither Cramer nor O'Connor nor Hunt testified. There is evidence that defendant did not know where they could be found. Cedarleaf, an agent or representative of defendant or its agent, was called by defendant and testified that he went to where these graveling contracts were performed. And defendant offered to prove by Cedarleaf that he went over certain claims, amounting to more than O'Connor and Hunt had earned, with Hunt and paid those approved by Hunt in writing with checks offered in evidence. Plaintiff's attorney objected to the offer as incompetent, hearsay, and no foundation laid, stating at the time that he had no objection to the checks and indorsements "if there was any foundation laid for showing any of such checks or receipts were issued for labor or material that went into either of these projects and furnished or performed for O'Connor and Hunt under their subcontract. As against plaintiff, holding O'Connor's and Hunt's assignment, it can hardly be claimed that Hunt, a month or more after title to the earnings had vested in plaintiff, had authority to make admissions adverse to its interests. 2 Dunnell, Minn. Dig. (2 ed.) § 3417. But be that as it may, we think defendant wholly failed to lay a foundation or to prove that it had paid a single claim incurred by O'Connor and Hunt in the performance of their contracts." Not one to whom defendant had issued a check or paid any money on work or materials connected either with the performance of the contracts of O'Connor and Hunt or with that of Cramer was produced as a witness. Cedarleaf's testimony as to the validity of any claim paid could be nothing but hearsay. And his statement: "It was disbursed in payment of bills and claims at the hands of Hunt and O'Connor and the Cramer Construction Company," was properly struck out as incompetent and in no way binding on plaintiff. The court ruled correctly. There was no proper foundation laid for the introduction of the checks by which defendant offered to prove its defense.

Defendant makes another contention not made at the trial nor in the motion for a new trial, that under a condition contained in Cramer's application to defendant to become a surety to the state for the performance of his contract, Cramer agreed that the "Vouch-

ers or other evidence of any loss paid  *  *  *  by the surety adjusting said loss or in completing said contract or subcontract, shall be taken as conclusive evidence against the ·undersigned [Cramer] of the fact and extent of the liability under said obligation to the surety." It is enough to say that Cramer is not a party to this action; and, as above stated, no attempt was made to prove any claim incurred by Cramer. A stipulation as to proof in a controversy between Cramer and defendant should not be extended to third parties.

Other assignments of error upon rulings on the admission or exclusion of evidence do not touch matters of sufficient importance for discussion. For instance, a conclusion of a witness was properly stricken. Whether Cedarleaf asked Hunt to pay any claim or did not is of no materiality. Exhibits 112 to 117, garnishee summonses and notices in certain actions brought against O'Connor and Hunt wherein Cramer, this defendant, and its agent were garnishees, were properly excluded, there being nothing shown respecting the cases or their disposition or bearing upon the issues here involved.

It may be conceded that some findings are immaterial, for instance, the one in relation to the agreement of Berkner to advance money and repairs needed by O'Connor and Hunt and the amount advanced, and the one in respect to the $13,000 loan of plaintiff to Berkner; but the course of the trial developed the facts, and no harm results from those and similar findings which do not control or direct the conclusion of law. The 70 per cent of the amount earned by O'Connor and Hunt amounted to $4,438.38. More than that sum was due plaintiff on the Berkner $16,000 note. There certainly is no evidence that the notes of O'Connor and Hunt for $16,360, given as collateral to Berkner's $16,000 note to plaintiff, have ever been paid or any part thereof. The $4,438.38 belonged to plaintiff to defendant's knowledge when it procured the $18,162.09 from the state which was to liquidate the $4,438.38 which was part of plaintiff's collateral to Berkner's note. Plaintiff was not bound to resort to the trucks or the conditional sales contract it also held

as collateral. There is no evidence that it directed Berkner to take possession of the trucks, and no accounting for the trucks can be had in this action to which Berkner is not a party. Nor do we see on what ground plaintiff can be charged with unclean hands or any wrong which would justify withholding the recovery herein granted.

The order is affirmed.

